(No. 4911– )

GARY MALLORY and SUSAN MALLORY, minors, by RUTH M. MALLORY, their Mother and next friend, and RUTH M. MALLORY, and MERTON MALLORY, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed November 13, 1962.*

EBERT AND SEIB, Attorneys for Claimants.

WILLIAM G. CLARK, Attorney General; HAROLD A. COWEN, Assistant Attorney General, for Respondent.

FEARER, J.

This is an action brought by claimants, Gary Mallory and Susan Mallory, minors, by Ruth M. Mallory, their Mother and next friend, Ruth M. Mallory, individually, and Merton Mallory, against respondent, State of Illinois, to recover damages for personal injuries and loss of consortium brought on behalf of Merton Mallory, for injuries sustained on the 12th day of October, 1959, on State Highway No. 19 at or near the DuPage-Cook County line in the State of Illinois.

There has been filed in this cause a complaint, an amended complaint, and a second amended complaint.

The complaints allege that one of the plaintiffs, Ruth M. Mallory, was driving a motor vehicle in an easterly direction on State Highway No. 19, at or about 7:00 P.M., at approximately ¾ of a mile west of Roselle Road in the Township of Hanover, County of Cook, State of Illinois, and at said time and place was in the exercise of ordinary care and caution for her own safety.

It was also alleged that Gary Mallory and Susan Mallory, her minor children, were riding as guest passengers, and that they were at all times exercising due care and caution for their own safety. Due to the age of the children, there is no question of contributory negligence on their behalf.

In the second amended complaint, an action is brought on behalf of Merton Mallory, husband of Ruth M. Mallory, for loss of consortium with the necessary allegations in regard thereto.

Respondent proceeded to trial under a general denial of the facts set forth in the complaints pursuant to Rule 11 of this Court.

On the evening of the accident, Ruth M. Mallory, along with her two children, Susan and Gary, and Leola Underwood and her daughter, Jennifer, were driving from a girl scout camp, which was about four miles east of Elgin, Illinois, and were returning to their home in Chicago. Mrs. Underwood was sitting in the front seat on the righthand side, the two small girls were in the back, and the small boy was riding to the right of Mrs. Underwood.

Respondent was charged with the following acts of negligence: constructed said highway at the place of the accident to permit a sudden narrowing of the road; failure to post warning signs of the narrowing of the road; allowing the shoulder of the road on the south side to erode and wash away, leaving a drop off of about six inches.

Briefly, Ruth M. Mallory was driving her husband's 1953 Dodge automobile in an easterly direction at or about the hour of 7:00 P.M., driving approximately 40 m.p.h., when suddenly the right wheels of the automobile dropped onto the shoulder causing her car to go out of control over into the westbound traffic lane and strike another vehicle.

There were offered in evidence photographs showing the extensive damage to the vehicles, namely claimants' exhibits Nos. 6 through 10, inclusive. The photographs clearly indicate that both vehicles were total wrecks. One man, Albert T. Miter, was killed in the westbound vehicle.

There were also claimants' exhibits introduced in evidence showing the highway and the shoulder, and one exhibit, which has been marked as petitioners' exhibit No. 3, which we assume is claimants' exhibit No. 3, of

measurements showing the width of the highway in question.

The injuries of Ruth M. Mallory were severe. Medical statements, with certain stipulations that they may be admitted into evidence, and that the doctors would testify in accordance thereto, were admitted in evidence, along with medical bills and testimony as to damages claimed as a result of this accident.

As we find in some of the cases, there is a lot to be desired as far as a record is concerned. It is especially difficult when you consider that this Court is not only passing on the legal aspect of each and every case, but also sitting as a jury and as a trier of the facts.

We are mindful of the fact that passengers, particularly the Mallory children, could not be guilty of anything, taking into consideration their tender years, age, experience and dependence. Their claims will then rise or fall on whether or not it was the sole negligence of their mother, which was the proximate cause of the accident, or the negligence of respondent, as charged.

As to Ruth M. Mallory and the claim of her husband, Merton Mallory, their claims will rise or fall on the question of whether or not it was the negligence of the State of Illinois, Division of Highways, and its failure to erect warning signs as to the narrowing of the pavement and the maintenance of the shoulders, and also the question of contributory negligence and the negligence of the operator of the automobile, Ruth M. Mallory, which was the proximate cause of the accident resulting in injuries.

The Commissioner, who heard this case, has made reference to certain testimony. We believe, because of the seriousness of the accident and the questions of fact involved, that it is going to be necessary to take

each witness separately, and to make a resume of the evidence.

Two abstracts of evidence have been filed in this case.

The first witness called for claimants was Russell Mallory, a brother-in-law of Ruth M. Mallory, who testified that he went to the scene of the accident the following day. That he also went back to the scene of the accident on October 14, 1959, and took some pictures, claimants' exhibits Nos. 1 through 5, inclusive, measured the road, and that he found that it narrowed 25 inches on each side. He did not measure the actual drop-off, but did have his wife stand apparently on the south side of the road next to the paved portion of the highway, being the traffic lane that Ruth M. Mallory would have been driving in on the night of the accident. This is shown in claimants' exhibit No. 4, which also indicated where the roadway narrows. He estimates that there is a drop-off of approximately 8 inches, and that it runs for approximately 76 yards along the south side of the highway in an easterly direction.

Some place in the record in this case, we have found that counsel for claimants has referred to ruts. The exhibits and testimony in support thereof does not indicate that the shoulders of the road were in disrepair, nor were there any ruts along the south side of the paved portion of the highway.

On cross-examination, Russell Mallory testified that he drives over this road about two or three times a week, and has for the past year, and that he knew the condition of the highway. He marked the measurements on claimants' exhibit No. 3, signing his name.

The record is not clear as to the figures of 22 feet, 2 inches, but we assume, although he did not so testify, that the paved portion of the road was 22 feet, 2 inches wide.

The next witness called on behalf of claimants was Joseph Ganziano, who lived on Route No. 1, his address being Box 9, Roselle, Illinois, being about a block and one-half from the scene of the accident. He testified that he had occasion to travel this road many times, and that he lived in Cook County where the road is blacktop, and that, when it comes to DuPage County, it is a concrete highway that narrows down approximately 2 feet. That there had been a drop-off on the south side of the road, but he did not know the extent of the drop-off, but that it did extend for some 75 yards. That he traveled back and forth at least twice a day over the road. That the condition existed for at least one year prior to the accident. That he never notified anyone about it.

At this point in the trial of the case, there appears to have been a stipulation by claimants' counsel and counsel for respondent that other witnesses would testify to the same condition.

Joseph Ganziano also testified that he did not notice any signs along the highway warning the traveling public of the narrowing of the paved portion of the road.

Claimants' next witness was Leola Underwood, who was a passenger in the car at the time of the accident. Her testimony was that they were coming from a girl scout camp, and were on their way back to their home in Chicago. The camp was located at Bartlett Woods, and she was riding in the car with Mrs. Mallory, who was driving. That with them was Susan and Gary Mallory, and daughter, Jennifer. That at the time of the accident it was dark. That Mrs. Mallory had the lights of the car on, and that the weather was nice. That they were traveling east on Route No. 19 towards Chicago. That all of a sudden the car swerved, and felt like a bump. That she does not drive a car herself, but has been a

passenger in automobiles for 25 years, and that, in her opinion, the Mallory car was traveling about 40 m.p.h. That she recalled nothing after the accident, as she was taken to the hospital in an ambulance.

On cross-examination, Leola Underwood testified that she did not notice anything wrong with the road, and does not recall any traffic on the road at the time.

Claimants' next witness was Kenneth Rackow, the State Trooper, living in Bellwood, Illinois. He testified that, on the night in question, he received a call at about 7:20 P.M., and, when he got to the scene of the accident, there was a great deal of congestion. He stopped automobiles, that the injured had already been removed from the scene, and that he proceeded to take the information that he could get at the scene of the accident, namely, the names and types of automobiles involved, and proceeded to the Sherman Hospital at Elgin, Illinois.

He testified that the day following the accident he completed his examination. That he picked up official police photographs, and stopped back at the scene (the photographs were never introduced in evidence). That he measured the highway at the point of the accident with the aid and assistance of someone in a highway department truck. He found that the roadway narrowed exactly 27 inches on each side. He also identified claimants' exhibits Nos. 2 and 4, and testified that they clearly portrayed the highway where the accident occurred. That the drop-off varied in depth from 2½ inches to 5 inches, but he did not measure the length. That he did judge that the automobile came back onto the highway about 50 feet from the point where the car dropped off. That he saw no warning signs of any kind. That the speed limit at the scene of the accident was 65 m.p.h.

On cross-examination, there seemed to be some mix-up as to whether or not the accident occurred in Cook County or DuPage County, and the officer, believing it occurred in Cook County, handled the investigation.

The photographs referred to were photographs of the automobiles, which the Court asked to have admitted in evidence as the Court's exhibits. Counsel for claimants at this point stated for the record that exhibits Nos. 6 through 10, inclusive, were offered only to show damage to the vehicles at the time of the accident and for no other purpose.

At this stage of the interrogation, the Commissioner interrogated the officer in respect to his questioning any of the occupants of the car, and he stated that the only people he was able to talk to were the two young girls, who knew nothing about the accident, and that all of the information that he had was what he gathered from the scene and the hospital records. He then went on to describe the age of Ruth M. Mallory as 42, and the injuries that he found to exist from the hospital records in regard to the claimants and passengers.

The officer further stated that he did not have an opportunity to talk to the driver of the car, which was struck by Ruth M. Mallory. This man's name was Albert T. Miter, and he was killed in the accident.

Ruth M. Mallory testified that she lived at 4837 Grace Street, Chicago, Illinois, with her husband, Merton Mallory, and two children, Susan, 12, and Gary, 7. That she was a housewife, and was involved in an automobile accident while returning to Chicago from a girl scout camp, and driving her husband's 1953 Dodge automobile. That she left the girl scout camp, which was about 4 miles east of Elgin, Illinois, at around 7:00 P.M. That it was dark, and she had her lights on, and was driving about

40 m.p.h. That traffic was light, and she did not have the radio on. That all of a sudden the right wheels went off the road, and, in trying to get back on the road, she heard a crash. That is all that she remembers. That she saw no signs along the highway. That she woke up in the hospital a few days later. That her left leg had been amputated, and her arm was in a cast. She then described her other injuries, and testified as to bills.

On cross-examination, Ruth M. Mallory testified that she had been over this same road about a year ago. That she was driving on the righthand side of the road, between the white line and the edge of the road, but does not recall exactly how far she was from the right edge of the road. That apparently the wheel of her car went off the road, and she refers to a rise, which appears to be a lip or drop-off from the paved portion of the shoulder, and lost control. That when her car left the road, she was traveling about 40 m.p.h. She made a mark on claimants' exhibit No. 2 where her car went off the road. That she put her foot on the brakes, and tried to stop by pushing the brakes, that there was a crash, and that she did not remember a thing after that.

At this point claimants' attorney asked that the matter be continued. That he would like to amend his pleadings to make the husband of Ruth M. Mallory a party, and bring an action for loss of consortium, as well as to amend the pleadings to the extent that the road narrowed 25 inches to conform to the proof. This was allowed, and a subsequent hearing and cross-examination of Ruth M. Mallory was had.

Ruth M. Mallory then stated that she did not remember seeing the car that she struck. All that she remembers is the right wheel going off the side of the road, and she tried to stop and applied her brakes, and turned back

onto the road, but that she could not get the car onto the road, and she lost control. She doesn't know how far she was driving her car from the white center line. That she went off of the road where it narrowed. That she does not remember how far from the point that she marked on exhibit No. 2 that she tried to get back on the road.

On being interrogated by the Commissioner, Ruth M. Mallory testified that she had been over the road once or twice before, but that her husband was driving. This was 9 months before the accident. That she had occasion to look at the road, and she knew it was not in good condition. That she slowed down to 20 m.p.h. at the time that she went back on the road. She does not remember stepping on the accelerator, but one wheel was off the pavement and one was on.

Respondent called William R. Stahl, Civil Engineer of the Division of Highways, who testified that, at the time of the accident, he knew nothing of the general condition of the road in the area. After the accident he found no warning signs in the area, and he ordered gravel placed along the edge of the pavement.

Under cross-examination, William R. Stahl testified that he went to the scene of the accident about 3 days afterwards, and saw no warning signs indicating that the pavement narrowed.

At this point of the trial, there was a stipulation as to the medical reports and bills, which were offered and received in evidence.

Ruth M. Mallory was called on redirect examination by her counsel. She testified that she felt the car go off the road, applied brakes, and tried to get back on the road, slowing the car down little by little in trying to get back on the road, and does not recall anything after that. That besides pumping the brakes to try to slow down, after slowing down, she attempted to get back on the

road. She estimates that she slowed down to about 20 m.p.h., and got back on the road.

Leola Underwood was recalled, and testified that, when the car went off the road, she hollered to Ruth to stop, and she said, ''I am trying'', and she noticed that the car swerved and bounced and bumped along.

On cross-examination, Leola Underwood testified that she did not see what Mrs. Mallory did, but that she estimated the speed of the car to be 35 to 40 m.p.h. She does not know how far the car traveled along the shoulder of the road before she tried to get back. That the car did slow down a bit after she applied the brakes.

Merton Mallory, husband of Ruth M. Mallory, testified as to the marital relationship after the accident, and also about the various injuries and expenses that he had incurred.

From the testimony of claimants' witnesses, there was no question but what the State failed to place an appropriate sign warning the traveling public that the pavement narrowed at the point where Ruth M. Mallory drove her car off of the highway onto the shoulder. Also, the State had not only constructive notice of this condition, but also actual notice, and it should have been apparent to respondent's agents that they should have posted signs warning the traveling public that this roadway narrowed, so that an operator of a vehicle would be placed on notice before coming to the point where the roadway was narrowed some 27 inches on each side.

This was a newly constructed blacktop road, and there were no white lines painted on the outside edges, which would make it apparent that the roadway narrowed; and a person driving near the outside edge of the paved portion on a black asphalt road would have difficulty observing the narrowing unless there were signs or painted lines on the outside edge of the highway.

Inasmuch as Ruth M. Mallory's car struck another vehicle traveling in the opposite direction, she was also confronted with oncoming lights, which would reduce her vision, wherein she might not be able to see the narrowing of the roadway, even though she was driving with proper lights on, which we find from the evidence in this case.

We are mindful of the fact that we have held many times that the State is not an insurer of everyone traveling upon its highways, and, further, that the State does not have to maintain the shoulders in the same condition as the paved portion of the highway.

As to Ruth M. Mallory's conduct in the operation of her vehicle in trying to get back onto the paved portion after the right wheel ran off onto the shoulder, to decide what she should have done in those circumstances would merely be speculating. She was faced with a sudden emergency, and, under the conditions, we find that she acted as an ordinarily prudent person would have acted under the same or similar circumstances.

As to the other claimants, there is no question of contributory negligence on their behalf, and from our findings it is believed that the proximate cause of the accident resulting in damages to claimants was due to the State's failure to give proper warning of the narrowing of the roadway at the point where the car left the highway.

There is no necessity of prolonging the opinion by reciting the nature and extent of Ruth M. Mallory's injuries, and itemizing her bills. She has lost a leg, and suffered other serious injuries.

It is, therefore, the opinion of this court that a claim should be allowed on behalf of Ruth M. Mallory in the sum of $25,000.00.

As to Gary Mallory, after reviewing the nature and extent of his injuries, it is our opinion that a claim should be allowed to Ruth M. Mallory, as mother and next friend for Gary Mallory, in the sum of $1,500.00.

As to Susan Mallory, after reviewing the nature and extent of her injuries, it is our opinion that a claim should be allowed to Ruth M. Mallory, as mother and next friend for Susan Mallory, in the sum of $500.00.

As to Merton Mallory, it is our opinion that an award should be made to him in the sum of $1,000.00, or, making a total award for all claimants of $28,000.00.